**SIGNED THIS: December 13, 2012**

_____
**Mary P. Gorman
United States Bankruptcy Judge**
_____


UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 11-70321 |
| ROBYN HICKS and ) | |
| JOAN HICKS, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| LINCOLN LAND FS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 11-7076 |
| ) | |
| ROBYN HICKS and ) | |
| JOAN HICKS, ) | |
| ) | |
| Defendants. ) | |

## O P I N I O N

This matter is before the Court for decision after trial of a four-count adversary complaint

-1-

filed by Lincoln Land FS, Inc. against Robyn and Joan Hicks. Because this Court finds that Lincoln Land FS met its burden of proof to establish that Mr. and Mrs. Hicks failed to explain satisfactorily the disposition of certain assets in which Lincoln Land FS had a secured interest, Mr. and Mrs. Hicks will be denied a discharge.

**Factual and Procedural History**

Robyn Hicks and Joan Hicks ("Debtors") filed a voluntary Chapter 7 petition on February 16, 2011. At paragraph 18 of their Statement of Financial Affairs filed with their petition, Debtors acknowledge that they operated Jacksonville Landscape, a landscaping business, from April 2004 to April 2009. At paragraph 10 of their Statement of Financial Affairs — which requires a debtor to list property transferred within two years immediately preceding the commencement of the case — Debtors checked the box "None." On their Schedule B — Personal Property — filed with the petition, Debtors did not list any machinery or equipment which would have been utilized in a landscaping business. On their Schedule F — Creditors Holding Unsecured Nonpriority Claims — filed with the petition, Debtors listed Lincoln Land FS, Inc. ("Lincoln Land") as having two unsecured claims in the amounts of $24,787 and $26,907 and listed the consideration for both claims as "Service."

Debtors filed a previous Chapter 12 bankruptcy case on June 27, 2006. At paragraph 4 of the Statement of Financial Affairs filed with their 2006 petition, Debtors acknowledged a pending lawsuit against them in Morgan County Circuit Court filed by Lincoln Land. On their Schedule B — Personal Property — filed in the 2006 case, Debtors listed multiple pieces of farm equipment and implements as well as many pieces of personal property which would be utilized in a landscaping business including sprayers, trailers, a chain saw, leaf blower, tiller, sod cutter, weed eater, hedge trimmer, as well as a John Deere track mower which the Debtors valued at $6000. The value of farm

equipment and implements and other types of equipment that was listed totaled $82,354.

In their 2006 case, Debtors filed a Chapter 12 Plan which drew objections from Lincoln Land, Corn Belt Bank & Trust Company ("Corn Belt"), and the Illinois Department of Revenue. On January 24, 2007, on the motion of the Debtors, the case was converted to Chapter 13. Debtors subsequently filed a Chapter 13 Plan which treated Lincoln Land as a secured creditor with a security interest in general intangibles, machinery, and other assets and proposed to pay Lincoln Land $51,440.08 along with interest at 8%. The Plan was not confirmed, and, on May 21, 2007, an Amended Chapter 13 Plan was filed. The primary difference between the Chapter 13 Plan and the Amended Chapter 13 Plan was the treatment of several secured or partially-secured creditors and what their alleged relative lien positions were with respect to the Debtors' farmland and equipment. The Amended Chapter 13 Plan treated Lincoln Land's claim as only partially secured, and proposed to pay Lincoln Land $4050 along with interest at 8%. The Amended Chapter 13 Plan drew multiple objections and was never confirmed. On July 26, 2007, the Chapter 13 Trustee filed a motion to dismiss the case and an order was entered on August 22, 2007, granting that motion. The Debtors moved to reinstate the case but that motion was denied. The 2006 case was closed on November 1, 2007.

During the pendency of the 2006 case, Lincoln Land filed an adversary complaint to determine the validity, priority, and perfection of the various claimed security interests in the assets of the Debtors. The complaint named Chapin State Bank, Corn Belt, Deere Credit Services, Inc. ("Deere"), and the Debtors as defendants. The Debtors answered the complaint, but did not actively participate in the litigation. The case was ultimately resolved with the entry of orders on June 20, 2007, and June 26, 2007, approving stipulations which established the respective lien priorities of Lincoln Land, Corn Belt, and Deere. Lincoln Land was declared to have had a first perfected security interest in two John Deere Z-Track mowers and a John Deere 665 tiller. All three pieces of

equipment were identified in the stipulations by serial number. Further, Lincoln Land was found to have a first perfected security interest in Debtors' accounts and documents of title, livestock, crops, farm products, and equipment to the extent not specifically identified as being subject to the first position security interests of Corn Belt or Deere.

Lincoln Land did nothing to collect its judgment or recognize on its collateral after the 2006 case was dismissed. But after this case was filed and the Debtors' schedules suggested that the collateral was no longer in the Debtors' possession, Lincoln Land filed its four-count adversary complaint. Count I alleges a nondischargeable debt based on a claim of the Debtors' willful and malicious injury to Lincoln Land's collateral. *See* 11 U.S.C. §523(a)(6). Counts II, III, and IV seek to deny the Debtors a discharge based on claims that the Debtors transferred property in fraud of creditors within one year of their case filing, made false oaths on their schedules, and failed to satisfactorily explain the loss of their assets. *See* 11 U.S.C. §§727(a)(2)(A), (a)(4), and (a)(5).

Counsel for Lincoln Land deposed the Debtors on January 6, 2012. During the deposition, Mr. Hicks stated that a portion of the collateral pledged to Lincoln Land — the two Z-Track mowers and the tiller — had been scrapped at "Capps" or "Kapps" Salvage in Jacksonville, Illinois. Debtors did not recall when the equipment had been scrapped, nor did they recall how much they received or with whom they dealt at the salvage yard. Thereafter, Lincoln Land propounded interrogatories to the Debtors. The interrogatories were answered but the answers were returned unsigned. In the interrogatories, Debtors identify the scrap yard at which the three subject pieces of equipment were sold as Jacksonville Iron & Metal in Jacksonville, Illinois. In response to questions regarding when the equipment was sold, the amount received from any sales, the names of individuals present at the time of any transactions, and whether any receipt, weight ticket, or memorandum of any transactions was provided, Debtors answered that they did not remember. Lincoln Land also served a request to produce on Debtors seeking documentary evidence ("weight ticket, receipt, or other memorandum

of transaction") regarding the disposition of the equipment and copies of bank statements. Copies of a few of the Debtors' bank statements were produced with a letter from a clerical staff employee of the Debtors' attorneys, but no formal reply was made to the production request and no documentary evidence relating to the disposition of Lincoln Land's collateral was produced by the Debtors.

On June 28, 2012, Lincoln Land filed a Motion in Limine seeking to bar the Debtors from presenting evidence or testimony which would have been responsive to the interrogatories or the production request. Lincoln Land asserted that it had tried to find the first salvage yard the Debtors had referred to in their deposition but had been unable to locate it. Lincoln Land's attorneys had contacted the second salvage yard named in the interrogatory answers and had been informed that although the yard keeps records of all transactions, no record of any transactions with the Debtors existed. Lincoln Land complained that it should not be required to continue to track down apparently false information and that the Debtors should be barred from presenting any further evidence on the issues. Lincoln Land also filed a Motion for Sanctions seeking to have the Debtors' answer to the complaint stricken and a default judgment entered as an additional sanction for Debtors' failure to fully comply with discovery.

Debtors filed one response to both of Lincoln Land's motions which asserted that the Debtors really had no recollection of any of the information that Lincoln Land was requesting. The response alleged that Lincoln Land was before the Court with "unclean hands" and that the pending action was one to "repeal" a discharge. The response also asserted that the "suggestion that reasonable compliance has not been given" by the Debtors was "repugnant at best." Despite the aggressive rhetoric, the response did not address the false information provided by the Debtors about the salvage yards, the Debtors' failure to complete and sign their interrogatory answers, or the Debtors' failure to formally respond to the production request.

A hearing on the Motion in Limine and the Motion for Sanctions was held on August 7, 2012. Lincoln Land's attorney argued that the Debtors had been given ample opportunity to explain the whereabouts of the missing collateral and should not be allowed to testify or present evidence at trial which had not previously been provided. The Debtors' attorney conceded that the Debtors should be "stuck" with the discovery answers provided to date but argued that they should not be defaulted as an additional sanction. Rather, he claimed that they should be allowed to testify at trial that they really do not remember anything about the disposition of the collateral. He admitted that their credibility would be at issue and that they might lose at trial but argued that they were entitled to have their day in court. At the conclusion of the hearing, the Court granted the Motion in Limine barring any evidence at trial that would have been responsive to questions asked at the deposition or in the interrogatories. The Court also barred the introduction at trial of any documents that had not been produced but that would have been responsive to Lincoln Land's production request. The Court denied the Motion for Sanctions.

On November 26, 2012, the day before this matter was scheduled for trial, Lincoln Land filed a motion to continue the trial suggesting that the case had settled. The details of the settlement were not provided and Lincoln Land requested fourteen days to file settlement documents. The Court entered an order denying the motion to continue stating that an objection to discharge action cannot be settled in exchange for a payment or a promise to pay value to a creditor in exchange for a dismissal of the objection. Accordingly, the Court ordered the parties to appear as scheduled to discuss whether any proposed settlement could be approved.

The parties and their attorneys appeared for trial on November 27, 2012. Lincoln Land's attorney acknowledged the prohibition against settling objections to discharge in exchange for value and stated that he had told the Debtors' attorney that he was concerned that the Court would not approve their settlement. Accordingly, he had not released his witnesses from their subpoenas and

he was ready for trial. The Debtors' attorney stated that he saw no problem with the Debtors stipulating to the facts necessary to establish the dischargeability portion of the complaint relating only to Lincoln Land's debt in exchange for an agreed dismissal of the rest of the complaint. Debtors' counsel cited no authority for his position. The Court refused to reconsider its prior order denying a continuance and directed that the trial go forward.

Lincoln Land called Mr. Robert Peacock, the owner of Jacksonville Iron & Metals, as its first witness. Mr. Peacock acknowledged being present as a result of a subpoena and that a subpoena for records had been issued to him as well. Mr. Peacock testified as to his practice in paying customers for scrap. He testified that he usually paid cash for a transaction under $100, but that he required customers to whom cash was paid to sign a ticket. For transactions exceeding $100, Mr. Peacock testified, he always paid customers by check. Mr. Peacock stated that, after a diligent and thorough search of his records, he found no checks or tickets for any purchase from Mr. or Mrs. Hicks or from Jacksonville Landscape.

Michael Stroup, finance manager for Lincoln Land, also testified. He stated that he was familiar with the Debtors' credit account and that Lincoln Land had obtained a state court judgment of slightly more than $51,000 against the Debtors prior to the filing of their 2006 case. Mr. Stroup stated that the Debtors have not paid anything on the judgment, and that Lincoln Land has never repossessed any assets pursuant to the judgment or its security interest in Debtors' property. Mr. Stroup further stated that Debtors never sought permission to sell any of Lincoln Land's collateral, and never notified Lincoln Land that they had sold any of the equipment. Mr. Stroup stated that he saw Mr. Hicks using one of the track mowers during the pendency of the 2006 bankruptcy, but has no knowledge of the whereabouts of any of the equipment since that time. Finally, Mr. Stroup testified that, based upon the value of the collateral which was awarded to Corn Belt and Deere in the adversary proceeding related to the 2006 case, Lincoln Land should have had, at minimum,

$27,000 in collateral based upon its first lien position in three pieces of equipment and its blanket lien on other assets.

Lincoln Land requested the Court to take judicial notice of a volume of documents from both this case and the Debtors' 2006 case. The Debtors made no objection to the request. The Debtors did not testify or call any witnesses on their behalf. The Debtors did not offer any exhibits into evidence. The Court heard arguments at the conclusion of the trial and the matter is ready for decision.

### Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1334. Determinations as to the dischargeability of particular debts are core proceedings. *See* 28 U.S.C. §157(b)(2)(I). Objections to discharge are also core proceedings. *See* 28 U.S.C. §157(b)(2)(J).

### Legal Analysis

The denial of discharge is considered to be a harsh and drastic penalty. *Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 464 (Bankr. N.D. Ill. 2007). Accordingly, it is reserved for the "truly pernicious debtor." *Soft Sheen Products, Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988). In keeping with the goal underlying the Bankruptcy Code of affording debtors a "fresh start," the grounds for denial of discharge under §727 are liberally construed in favor of debtors and strictly against objectors. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996). In exchange for their fresh start, however, debtors are required to present themselves accurately and truthfully before the court. *Interstate Producers Livestock Ass'n v. Hammitt (In re Hammitt)*, 289 B.R. 670, 675 (Bankr. C.D. Ill. 2001). An objector seeking denial of discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999).

In his opening remarks at trial, Lincoln Land's attorney stated that he would concentrate his presentation on Count IV of the complaint brought pursuant to §727(a)(5) which provides as follows:

(a) The court shall grant the debtor a discharge, unless —

(5) the debtor has failed to explain satisfactorily, before determination of denial of the discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. §727(a)(5).

Under §727(a)(5), the Court has "broad power to decline or grant a discharge…where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *First Federated Life Ins. Co. et al. v. Martin* (*In re Martin*), 698 F.2d 883, 886 (7th Cir. 1983). Section 727(a)(5) calls for two stages of proof. *Hammitt*, 289 B.R. at 678. First, the party objecting to discharge "has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors." *Martin*, 698 F.2d at 886; *see Schechter v. Hansen* (*In re Hansen*), 325 B.R. 746, 763 (Bankr. N.D. Ill. 2005). If the objecting party meets that burden, then the debtor is required to provide a satisfactory explanation for the loss. *Martin*, 698 F.2d at 886-87; *Buckeye Ret. Properties of Ind., LLC v. Tauber* (*In re Tauber*), 349 B.R. 540, 565 (Bankr. N.D. Ind. 2006). A satisfactory explanation "'must consist of more than…vague, indefinite, and uncorroborated' assertions by the debtor." *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996) (quoting *Baum v. Earl Millikin, Inc.* (*In re Baum*), 359 F.2d 811, 814 (7th Cir. 1966)). The determination of whether the debtor's explanation is "satisfactory" is left to the discretion of the court. *Baum*, 359 F.2d at 814. An objecting creditor must prevail on two issues: the disappearance of substantial assets and the lack of a satisfactory explanation for the disappearance. *Saluja v. Mantra* (*In re Mantra*), 314 B.R. 723, 730-31 (Bankr. N.D. Ill. 2004) (citing *First Commercial Fin. Group, Inc. v. Hermanson* (*In re Hermanson*), 273 B.R. 538, 546 (Bankr. N.D. Ill. 2002)). An action under §727(a)(5) does not require a showing of fraudulent intent. *Mantra*, 314 B.R. at 730.

At Lincoln Land's request, and with no objection from the Debtors, the Court took judicial notice of the schedules, Statement of Financial Affairs, Chapter 12 Plan, Chapter 13 Plan, Amended Chapter 13 Plan, and the docket from the 2006 case. Additionally, at Lincoln Land's request, and with no objection from the Debtors, the Court also took judicial notice of the two stipulations and the two orders approving the stipulations in the 2006 adversary matter. Collectively, these documents prove the existence of valuable items of property in which Lincoln Land was found to have a secured interest. Schedule B in Debtors' 2006 case discloses ownership of one John Deere track mower, which is valued at $6000, as well as three tillers. The stipulations filed in the 2006 adversary case identify the items of personal property in which Plaintiff had a secured interest — two John Deere Z-Track mowers and a John Deere 665 tiller — with more specificity. Debtors were named defendants in the adversary proceeding and never disputed — formally or informally — the existence of the collateral or their possession of it at the time.

Also, at Plaintiff's request, and with no objection from the Debtors, the Court took judicial notice of the petition, schedules, and Statement of Financial Affairs filed in the 2011 case. These documents indicate that Debtors owned none of the machinery and equipment used in the landscaping business at the time of the 2011 filing and, furthermore, indicate that no transfers of any such machinery and equipment were made in the previous two years. Inasmuch as Debtors operated their landscaping business until April 2009, and the 2011 petition was filed on February 16, 2011, the subject machinery and equipment inferentially had to have been in Debtors' possession, or to have been sold or otherwise disposed of by Debtors, within the two years before the February 16, 2011, filing.

Debtors have never, formally or informally, to this day denied having owned the items of personal property in question. Rather, they indicated in discovery that the mowers and the tiller had been sold for scrap at unknown times to unknown persons. When pressed, they first identified the

-10-

purchaser as a salvage yard which apparently does not exist and then later identified the purchaser as a different scrap yard which has no records of ever doing business with them. According to their own filings, the Debtors operated a small business in a small community until April 2009. Their inability to recall virtually any details of the winding down of their business and the liquidation of their business assets is not credible. Accordingly, the Motion in Limine was properly allowed.

At trial, Debtors were limited in their ability to rebut or respond to Lincoln Land's case by the order granting Lincoln Land's Motion in Limine. However, Debtors' attorney said repeatedly at trial that he was not complaining about the entry of the Order in Limine. And, despite their stated intent to have their day in court and testify that they really had no recollection about the disposition of Lincoln Land's collateral, neither of the Debtors took the stand.

Thus, Lincoln Land met its burden of proving that the Debtors owned significant identifiable assets that are unaccounted for, rendering Lincoln Land's secured interest in the property worthless. Debtors have not provided a satisfactory explanation for the loss of the identified assets. Accordingly, their discharge must be denied.

In a last ditch effort to avoid this inevitable result, Debtors attempted to settle with Lincoln Land by offering to concede the issue of the non-dischargeablity of their debt to Lincoln Land in exchange for dismissal of the remaining counts of the complaint. In essence, the Debtors were offering value to Lincoln Land in consideration of Lincoln Land dropping its objection to discharge. Buying a discharge in this manner is strictly prohibited. *See Moister v. Vickers* (*In re Vickers*), 176 B.R. 287, 290 (Bankr. N.D. Ga. 1994); *In re Moore*, 50 B.R. 661, 664 (Bankr. E.D. Tenn. 1985). Once a creditor files an objection to discharge, it may not settle the action for its private benefit but only for the good of the entire body of creditors. *See In re Bates*, 211 B.R. 338, 347 (Bankr. D. Minn. 1997). To ensure compliance with this policy, limitations and special notice requirements are imposed on creditors before dismissal of objections to discharge. *See* Fed. R. Bankr. P. 7041. And,

"[n]o amount of notice, absence of objection, or lack of creditor interest can change this principle or remove the fundamental impropriety which taints a settlement that does not comply with it." *Bank One, Crawfordsville, NA v. Smith* (*In re Smith*), 207 B.R. 177, 178 (Bankr. N.D. Ind. 1997). The Debtors and Lincoln Land should not have attempted to settle on the terms they did, and the tentative settlement was properly rejected.

## Conclusion

For the reasons set forth above, the Court finds in favor of Lincoln Land and against the Debtors on Count IV of its complaint. Debtors will be denied a discharge pursuant to 11 U.S.C. §727(a)(5). With the granting of that relief, it is not necessary to address the other counts of the adversary complaint.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###